NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DAVID MARTIN and LUISA MARTIN,

    Plaintiffs,

v.

HUDSON FARM CLUB, INC.; LUKAS SPARLING; and GRIFFIN & HOWE, INC.,

    Defendants.

Civil Action No. 18-02511

**OPINION**

**CHESLER**, District Judge

    This matter comes before the Court on the motion for partial summary judgment filed by Plaintiffs David and Luisa Martin ("Plaintiffs")[1] as to certain affirmative defenses which Defendants Hudson Farm Club ("HFC") and Lukas Sparling (collectively, the "HFC Defendants"), and Defendant Griffin & Howe, Inc. ("G&H" and, collectively with the HFC Defendants, "Defendants") have asserted, pursuant to Federal Rule of Civil Procedure 56. The Court has reviewed the papers submitted and proceeds to rule without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, Plaintiffs' motion for summary judgment will be denied.

---

[1] References to "Martin" in this Opinion concern David Martin.

I. **BACKGROUND**[2]

On September 19, 2017, Martin participated in a charitable clay shooting event at HFC in Andover, New Jersey. (Pls.' 56.1 Statement ¶ 17.) The event had multiple starting stations at which the participants would begin their shooting activities. (Pls.' 56.1 Statement ¶ 51.) On the day of the incident, the event participants either walked to their assigned station or, for certain starting stations, the participants were transported by various types of vehicles. (Pls.' 56.1 Statement ¶¶ 28, 37.) Certain guests were assigned to ride in tractor-pulled wagons while others were assigned to ride in Polaris Ranger Vehicles. (Pls.' 56.1 Statement ¶ 28.)

Martin testified that he was assigned to and boarded one of the wagons, where he sat about "halfway up on the bench." (Pls.' 56.1 Statement ¶¶ 29–30.) According to Martin, there were eight to ten individuals on each side of the wagon, roughly sixteen to twenty people seated in the wagon in total, and two to four employees rode the wagon on the rear steps. (Pls.' 56.1 Statement ¶¶ 31–32, 34.) There were three individuals—the driver (Defendant Sparling, an employee of both HFC and G&H) and two other "workers"—on board the tractor pulling the wagon. (Pls.' 56.1 Statement ¶¶ 10–11, 35, 42.)

The tractor driven by Sparling and the attached wagon on which Martin rode were destined for a station which was located at the top of a hill. (Pls.' 56.1 Statement ¶ 53.) While ascending, and at about two-thirds of the way up the hill, the tractor stalled. (Pls.' 56.1 Statement ¶¶ 53, 69.) The tractor then started to roll backwards. (Pls.' 56.1 Statement ¶¶ 70–72.) Deposition testimony of Martin and other passengers indicated that they feared that the tractor and wagon would

---

[2] The facts are those set forth in Plaintiffs' Rule 56.1 Statement ("Pls.' 56.1 Statement") (ECF No. 164-2), the HFC Defendants' Counterstatement of Material Facts ("HFC's 56.1 Counterstatement") (ECF No. 170-2), and the G&H Defendants' Counterstatement of Material Facts ("G&H's 56.1 Counterstatement") (ECF No. 171-2), as viewed in light of the Plaintiffs' and Defendants' responses to the same (ECF Nos. 170-1; 171-2; 172-1; 173-1).

jackknife or roll over. (Pls.' 56.1 Statement ¶¶ 82–87.)[3]  Martin testified that he decided to alight from[4] the wagon during the decent because of his concern that "the tractor was going to roll over" him. (Pls.' 56.1 Statement ¶ 86.)

Martin was not the only passenger who disembarked the wagon. One individual testified that he jumped off the wagon when it stalled on the hill. (Pls.' 56.1 Statement ¶¶ 92–93.) Two other individuals, one of whom was riding on the "other side" of the wagon, also disembarked the wagon while it was stalled or during its descent. (Pls.' 56.1 Statement ¶¶ 94–95.)

According to his testimony, during the descent Martin "stood up on the bench, then I jumped over and I hung on the side of [the wagon]." (Pls.' 56.1 Statement ¶ 99.) He further testified that he held on to the side of the wagon for "at least five" and "[m]aybe six seconds." (Pls.' 56.1 Statement ¶ 101.) Martin testified about his decision-making process in jumping from the wagon:

> I'm positive I hung on the side. Only reason why I know because as I was hanging on the side. I was struggling, to try to put my feet on the edge because I was sort of hanging with the – I was trying to get steady. And as it got faster and faster, I was looking as point, you heard the screeching of the tires, the screeching seems—from that—the point where he was out of gear, the screeching was unmistakable the whole entire ride. And it got faster and louder and louder and it goes faster and faster and I held on. I tried to stay on as long as I could and lows as I could, it's come -- you know, as if I was – if he caught it, if it stopped then I would -- but then as it got faster and faster and faster and then as soon as it got to the point where I felt like things were going to get out of control, things were going to get bad, I

---

[3] Defendants contest Plaintiffs' submission and reliance upon the affidavits of Andrew Trotta, Darren Bould, Donald Capitali and John Gemmell, several of which are undated and none of which were served prior to the close of discovery years ago. (HFC Dfts.' Br. at 3 (ECF No. 170); G&H Dfts.' Br. at 2 (ECF No. 171).) Because the facts established in the affidavits do not impact the Court's conclusion that Plaintiffs' motion must be denied, it declines to reach the question of whether the affidavits should be set aside.

[4] There is a dispute between the Parties' regarding the exact manner by which Martin disembarked the wagon. Plaintiffs variously contend that Martin "jumped" or "stepped off" the wagon. (*See, e.g.*, Pls.' 56.1 Statement ¶¶ 88–89.) Defendants, for their part, submit testimony that Martin "[l]eaped like he was jumping into a lake." (HFC Defendants' Response to Plaintiffs' Statement of Material Facts ¶¶ 2, 86, 89.)

3

> seen an opening where I felt it was the safest part I could do it and I just pushed away from the wagon.

(Pls.' 56.1 Statement ¶ 100.) According to Martin, he did not disembark via the rear steps of the wagon "because [they] were too far way" and "it was quicker and easier to go over the side." (Pls.' 56.1 Statement ¶¶ 103–04.) Martin suffered injuries after alighting from the wagon and the wagon ultimately crashed into a van at the bottom of the hill. (Pls.' 56.1 Statement ¶¶ 89, 106.)

The Parties also submit evidence arising from competing expert reports and which reach different conclusions regarding the underlying causes of the tractor and wagon's backward descent. (Pls.' 56.1 Statement ¶¶ 39–40; HFC's 56.1 Counterstatement ¶¶ 2–9; G&H's 56.1 Counterstatement ¶¶ 4–10.)

## II.  DISCUSSION

Plaintiffs bring their motion pursuant to Federal Rule of Civil Procedure 56 seeking summary judgment as to Defendants' affirmative defenses "related to the plaintiff's own alleged negligence, culpable conduct, comparative fault, comparative negligence, and/or contributory negligence." (ECF No. 164.) Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). It may not make credibility

determinations or engage in any weighing of the evidence. *Anderson*, 477 U.S. at 255; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the nonmoving party must establish the existence of a genuine issue as to a material fact to defeat the motion. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001), *overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs*, 134 S. Ct. 773 (2014). The party opposing a motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

"An affirmative defense generally constitutes a 'defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.'" *Mod. Creative Servs., Inc. v. Dell Inc.*, 2008 WL 305747, at *2 (D.N.J. Jan. 28, 2008). "In cases where a plaintiff is responsible, in whole or in part, for the harm or injury she suffers, the doctrines of comparative negligence, avoidable consequences, or superseding/intervening causation may serve to absolve a defendant of liability or limit her damages." *Komlodi v. Picciano*, 217 N.J. 387, 411 (2014). If Plaintiffs have met their burden, the Court may foreclose an affirmative defense as a matter of law. *E.g.*, *Seagate Tech. (US) Holdings, Inc. v. Syntellect*, 2015 WL 5568619, *6 (D.Del. 2015).

### A. Comparative and Contributory Negligence

New Jersey's Comparative Negligence Act permits recovery if the plaintiff's negligence "was not greater than the negligence of the person against whom recovery is sought . . . ." N.J.S.A. 2A:15-5.1. The statute further provides that, where recovery on a negligence claim is not precluded, a plaintiff's damages are diminished by the percentage of negligence attributable to the plaintiff. *Erny v. Estate of Merola*, 171 N.J. 86, 97 (2002). "[C]omparative negligence comes into action when the injured party's carelessness occurs before defendant's wrong has been committed *or* concurrently with it." *Ostrowski v. Azzara*, 111 N.J. 429, 438 (1988). The statute further provides that, where recovery on a negligence claim is not precluded, a plaintiff's damages are diminished by the percentage of negligence attributable to the plaintiff. *Id*. (*citing Erny*, 171 N.J. at 97.

"In general terms, a passenger is bound to exercise for his own safety the care of a reasonably prudent person under the circumstances." *Ambrose v. Cyphers*, 29 N.J. 138, 150 (1959). In the context of an automobile collision, New Jersey courts have found that passengers are subject to two duties: "[N]ot to interfere with the driver's operations and to protect himself or herself." *Champion ex rel. Ezzo v. Dunfee*, 398 N.J. Super. 112, 118–19 (App. Div. 2008). As to the latter duty, the "general rule is that a passenger is 'bound to exercise such care for his own safety as the exigencies of the situation require.'" *Melone v. Jersey Central Power & Light Company*, 18 N.J. 163 (1955).[5]

---

[5] Plaintiffs' reliance on *Giardini v. McAdoo*, 93 N.J.L. 138, 141 (1919) and *N. Jersey St. Ry. Co. v. Purdy*, 142 F. 955, 956 (3d Cir. 1906) is misplaced. Both *Giardini* and *Purdy* involved common carriers, which are under a duty to "exercise the strictest vigilance, not only in carrying the passenger, but in setting him down at a station . . ." 93 N.J.L. at 140–41. Plaintiffs do not allege that such a strict duty applies here, and Defendants are plainly not common carriers.

6

Here, Plaintiffs ask the Court to usurp a responsibility that must remain with the jury, as the facts as set forth in the Rule 56.1 Statements are sufficient to permit a factfinder to conclude that Martin was at least partially responsible for his injuries. Martin decided to alight from the side of the wagon after the tractor stalled, while other passengers—seemingly the majority of them—remained in the vehicle. The decision to flee the vehicle and the manner by which Martin disembarked the vehicle must be considered in full view of the totality of the circumstances to determine whether Martin "exercise[d] for his own safety the care of a reasonably prudent person under the circumstances." *Ambrose*, 29 N.J. at 150. The disagreement between the Parties' respective liability experts only underscores the need for the presentation of evidence. The Court cannot, on this record, take away the jury the question of Martin's comparative negligence.[6]

That this is a question for a jury is amply supported by the substantial majority of the cases to which even Plaintiffs cite.[7] One notable outlier relied on by Plaintiffs is *Ambrose,* in which the Supreme Court of New Jersey upheld a trial court's decision to keep from the jury the question of

---

[6] In the context of Martin's duty to exercise care for one's own safety, Plaintiffs suggest that in the absence of facts showing that "Martin had any opportunity to protest the driver's negligence," reasonable care required only that the "passenger [Martin] . . . to leave the [Wagon] when a reasonable opportunity [was] afforded . . . ." (Pltfs.' Br. at 17 (ECF No. 164-3) (citing *Champion*, 398 N.J. Super. at 118).) This, however, was merely one application of the "general rule" articulated in *Ambrose* that a passenger "exercise for his own safety the care of a reasonably prudent person under the circumstances." 29 N.J. at 150. Furthermore, in light of the facts in *Champion*, and the ultimate determination of liability and comparative negligence remained with the jury. 398 N.J. Super. at 119.

[7] *See, e.g.*, *Melone*, 18 N.J. at 163 (contributory negligence a question for the jury where the plaintiff-passenger testified that the driver was driving in "a very normal fashion" considering the rainy conditions, yet the passenger "wasn't paying much attention" and had been "sitting there nonchalantly"); *Tabor v. O'Grady*, 59 N.J. Super. 330 (App. Div. 1960) (whether plaintiff was contributorily negligent by failing to control or restrain the driver, or by failing to get out of the vehicle before the accident, was "reasonably debatable" and thus a question for the jury); *Staines v. Cent R. Co.*, 72 N.J.L. 268 (1905) ("Whether or not, under the circumstances, a person exercising reasonable care would have jumped [from a stopped train], is a question of fact for a jury."); *Lehner v. Pittsburgh R. Company*, 223 Pa. 208 (1909) (where plaintiff jumped from a trolley car that had stalled near a steep hill, whether so jumping was negligent was "undoubtedly for the jury"); *Paine v. Geneva, W., S.F. & C.L. Traction Co.*, 101 N.Y.S. 204, 205 (App. Div. 1906) (whether plaintiff was negligent when he jumped from the car while the other passengers remained seated was a question for the jury); *Poulsen v. Nassau E.R. Co.*, 51 N.Y.S. 933 (1898) (proper to submit issue of contributory negligence to jury where plaintiff jumped from the train when she was scared by a flash).

7

contributory negligence in light of the evidence available. 29 N.J. at 138. In *Ambrose*, the trial court found that there was "no evidence" of contributory negligence where the passenger-plaintiff was unaware of any peril or that the driver was about to conduct an unexpected and dangerous U-turn during which the automobile was struck by another. 29 N.J. at 150. Unlike *Ambrose*, it is clear that Martin took certain actions which, when viewed in Defendants' favor, could establish that at least some negligence is attributable to Martin.

### B. The Sudden Emergency Doctrine

As an alternative ground for the requested relief, Plaintiffs ask the Court to foreclose Defendants' affirmative defenses in light of New Jersey's "sudden emergency doctrine." The sudden emergency doctrine applies when "a party [was] confronted by a sudden emergency over which he had no control, without fault on his part." *Roberts v. Hooper*, 181 N.J. Super. 474, 478 (App. Div. 1981). The doctrine "negates negligence if the jury finds that the party chose one of alternative reasonably prudent courses of action, even though, by hindsight, another course of action would have been safer." *Id*. at 478–79; *Ettin v. Ava Truck Leasing*, 53 N.J. 463, 485–86 (1969) ("[O]ne who in a sudden emergency acts according to his best judgment but not in the most judicious manner is not chargeable with negligence, provided he exercises the care of a reasonable prudent person individually under like circumstances.")

Setting aside the question of whether the sudden emergency doctrine would appropriately apply here,[8] Plaintiffs ask the Court to brush over a critical element typically reserved for the jury:

---

[8] The Court acknowledges that the sudden emergency doctrine is, in the modern view, considered "unnecessary, confusing, and conceptually subsumed within the charge for comparative fault." *Murphy v. Martin*, 2017 WL 1207982, at *5 (N.J. Super. Ct. App. Div. Apr. 3, 2017) (finding the trial judge erred in issuing the sudden emergency doctrine charge as it "gives the jury an explicit judicial imprimatur that a litigant's conduct in a negligence case can be excused if he or she was responding to an emergency"); Glenn A. Grant, Acting Administrative Director of the Courts, *Notice to the Bar Model Civil Jury Charge Update*, Aug. 22, 2018 (https://www.njcourts.gov/notices/2018/n180822a.pdf) (noting that "it is outdated and

8

That Martin's actions were those of a "reasonably prudent person." *Ettin*, 53 N.J. at 485–86. As Plaintiffs' own authorities recognize, Martin "may still be negligent if his acts are unreasonable, and the question is one for the jury unless, perchance, it can elicit but one response from reasonable minds." *Harpell v. Public Service Coordinated Transport*, 20 N.J. 309 (1956). As already noted, a jury could conclude that Martin's decision to disembark and the manner in which he did so were not reasonable. Such a conclusion would render the sudden emergency doctrine inapplicable here.

### III. SUPERSEDING AND INTERVENING CAUSATION

Plaintiffs also appear to contend that Defendants should be foreclosed from arguing that they are relieved from liability by dint of superseding or intervening causes which resulted in Martin's injuries. (Pltfs.' Br. at 21–22.)

Proximate cause is a necessary element to establish negligence under New Jersey law. *Polzo v. Cnty. of Essex,* 196 N.J. 569, 584 (2008). As the New Jersey Appellate Division has explained:

> The causal connection may be broken by a superseding intervening cause. Such a cause must be one that so entirely supersedes the operation of the first tortfeasor's negligence that it alone caused the injury, without the first tortfeasor's negligence contributing thereto in any material way. But where the original tortfeasor's negligence is an essential link in the chain of causation, such a causal connection is not broken if the intervening cause is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable.

*Davis v. Brooks,* 280 N.J. Super. 406, 412–13 (Super.Ct.App.Div.1993) (collecting cases). "Proximate cause requires only some direct relation between the injury asserted and the injurious conduct alleged, and excludes only those links that are too remote, purely contingent, or indirect

---

concerns a very narrow area of the law that is typically not addressed and for which the applicable case law is very clear").

. . . . A cause can be thought superseding only if it is a cause of independent origin that was not foreseeable." *McKenna v. City of Philadelphia,* 649 F.3d 171, 178 (3d Cir. 2011) (alterations and internal quotations omitted). "The fact that there were also intervening causes which were foreseeable or were normal incidents of the risk created would not relieve the tortfeasor of liability." *Rappaport v. Nichols*, 31 N.J. 188, 203 (1959).

Courts are empowered to grant summary judgment on the issue of superseding and intervening causation, *see, e.g.*, *Rotenberg v. Lake Charter Bus Corp.*, 2014 WL 284255, *4 (D.N.J. 2014), but where there are disputed issues, "whether a particular risk is foreseeable . . . [is an] issue[] for the jury." *Komloudi*, 217 N.J. at 419. Whether Martin's alightment from the wagon was reasonably foreseeable is one such issue. *See, e.g. Cowan v. Doering*, 111 N.J. 451, 465 (1988) (whether plaintiff's leap from the window of a hospital, where doctors were aware of her suicidal propensities, was reasonably foreseeable was a question appropriately for the jury decide).[9]

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs have not demonstrated that they are entitled to summary judgment regarding Defendants' affirmative defenses of Martin's culpable conduct, comparative fault, comparative negligence, and/or contributory negligence, and Plaintiffs' motion will be denied. An appropriate Order will issue.

---

[9] Plaintiffs also argue in their briefing about the contours of the avoidable consequences doctrine, but it is not apparent to the Court whether Plaintiffs seek relief regarding the same. Plaintiffs in their notice of motion do not ask the Court to foreclose an affirmative defense of avoidable consequences (ECF No. 164), and they later contend that defense "goes only to damages, and not to the instant motion" (Pltfs.' Br. at 20). According, no relief will be awarded on the issue. In any event, the application of this doctrine would properly be a jury question in light of the facts. *Komlodi*, 217 N.J. at 412.

                                          _s/ Stanley R. Chesler_
                                          STANLEY R. CHESLER
                                          United States District Judge

Dated: August __, 2022